A. J. PHILLIPS CO. v. OWOSSO MANUF'G CO.

(Circuit Court, E. D. Michigan, S. D. March 9, 1896.)

PATENTS — CONSTRUCTION OF CLAIMS — MECHANICAL EQUIVALENTS — WINDOW-SCREEN FRAMES.

> The Brent patent, No. 281,964, for improvements in window-screen frames, is not for a primary invention justifying the liberal application of the rules in respect to mechanical equivalents, but must be confined to the particular combinations specified in the claims; and, as one of the elements claimed is a "metallic" corner piece, there is no infringement in the use of screen frames constructed wholly of wood.

This was a suit in equity by the A. J. Phillips Company against the Owosso Manufacturing Company for alleged infringement of a patent for improvements in window-screen frames.

George H. Lothrop, for complainant.

James Whittemore, for defendant.

SWAN, District Judge. Complainant is a corporation organized under the laws of Michigan, and is the owner, by assignment, of letters patent No. 281,964, granted to Edmund J. Brent, July 24, 1883, for a window-screen frame, and brings this suit for the alleged infringement by defendant of the rights secured by said letters patent. The defendant is also a corporation organized under the laws of Michigan, and conducts its business at Owosso, Mich. The patent sued upon declares in its specification that the inventor has "invented certain new and useful improvements in window-screen frames." It further says:

"This invention relates to improvements in corner pieces or brackets for door and window screen frames; and the objects are to provide corner pieces for the purposes mentioned, which may be readily applied to the screen frame, which will hold the frame securely together, which can be applied to frames

for any sized doors or windows, and which can be packed, with the frame sticks, in a very small space for transportation. In the manufacture of frames for door and window screens it is essential that the frames be light, and that the corner pieces shall be light, and susceptible of ready attachment and detachment. The frame sticks are generally made long and high enough to fit any ordinary window or door, and are packed, with corner pieces, for shipment, the frame sticks being cut off by the users to suit the window where set in for use. My invention therefore consists in a metallic corner T-shaped piece for door and window screen frames, formed of a single piece having a vertical open sleeve piece, and a horizontal open sleeve piece adapted to receive and retain, respectively, a side bar and either a top or a bottom bar for a corner connection. My invention further consists in a metallic corner T-shaped piece formed of a single piece having a vertical open sleeve piece and a horizontal open sleeve piece, in combination with frame sticks, adapted to fit in the open sleeves of the corner pieces, as hereinafter more fully set forth. My invention further consists in metallic corner pieces of a special construction, in combination with side, top, and bottom sticks or pieces, united in such a manner that both sides of the frame shall be even or flush for the attachment of the screen cloth or netting to either side."

In his description of the accompanying drawings, forming part of his specifications, the inventor says further:

"The letter A represents the metallic corner piece formed with the vertical open sleeve, B, and the horizontal open sleeve, C, the general configuration being T-shaped, substantially as shown."

His claim is as follows:

"What I claim as my invention, and desire to secure by letters patent, is: (1) As an improved article of manufacture, a metallic corner piece made T-shaped, and formed with vertical and horizontal passages, for the purpose set forth. (2) The metallic corner piece formed with a horizontal arm or sleeve intermediately arranged between the ends of the side piece for the reception of the side and the top or bottom sticks, of even thickness therewith, to secure flush sides and ends, substantially as described. (3) The combination of metallic corner pieces, each made T-shaped, and having a vertical open sleeve and a horizontal open sleeve, in combination with frame sticks fitted in the open sleeves of the corner pieces, substantially as described."

The third of these claims is alone in issue, no infringement being charged as to claims 1 and 2 of the patent. The screen frame made by defendant consists of four sticks, each provided with a tongue along one side, and four corner pieces, each of which has two open sleeves or grooves, one groove extending along the end of the other to the width of the frame stick. The defendant also fills in one side of the T, slightly changing the appearance of the corner piece. It is not claimed that the defendant makes use of the metallic corner piece in the frames manufactured by them, but it is conceded, and the exhibits demonstrate, that their screen frames are constructed wholly of wood. The merit claimed for the complainant's device is that the frame constructed under the patent has no openings through which insects can enter; that the corners are finished or flushed on both sides, and that this is due to the fact that one of the open sleeves runs across one end of the other open sleeve. It is also claimed to be superior because of its simplicity of construction, which enables them to be easily put together by purchasers; and that, when put together, they are firm, and neat in appearance. We are not concerned, however, with the relative merits of the patented manufacture as compared with other constructions, patented or unpatented.

83 F.—12

It may be assumed that the defendant has substantially copied the form of the corner pieces described in the patent. The mere variation of that form by the filling of one side of the T in defendant's manufacture would not suffice to repel the charge of infringement if that were the only point of difference between the frames made by the respective parties. The only inquiry, therefore, is whether the defendant, who confessedly used wood alone, has infringed the third claim of the patent, which calls for the "combination of metallic corner pieces, each made T-shaped, * * * in combination with frame sticks fitted in the open sleeves of the corner pieces, substantially as described." It is insisted on the part of the complainant that Brent's patent is entitled to a liberal construction as a pioneer or primary patent, and that, as he was the first to invent the T-shaped corner pieces, adapted for use in window-screen frames, he is entitled to invoke the doctrine of equivalents, and call upon the court to enjoin all invasions of that patent, whatever the material used in construction. It can hardly be said that the Brent screen frame is an entirely original device. The T-shaped joint or corner piece is, of course, old, and no originality is or can be claimed for it. The third claim of the patent is that Brent is the inventor of the "combination of the metallic corner piece with the frame sticks," etc., substantially as described, and, as both elements of this combination were well known prior to his patent, his invention is to be regarded rather as an improvement on preceding methods of construction, and not as a totally new departure in manufactures. In this view, therefore, it is well settled that he is not entitled to invoke the doctrine of equivalents, but his patent must be limited to what he himself has declared to be his invention. This he has defined in unmistakable language. Each of his three claims calls expressly for the "metallic" corner piece of the described form. In the quotations given above from his specification in three consecutive paragraphs he, in express terms, affirms, "My invention, therefore, consists in metallic corner T-shaped pieces" of the construction described. It is impossible to read these repeated restrictions which the inventor has imposed upon his own rights without concluding that they were intentionally made, and express his own conception of what he had originated. He evidently thought that the desired strength and solidity, the exclusion of insects by the method of construction of the corner piece, and the facility with which the frame could be put together and taken apart, could only be attained by the use of metal. He further emphasizes his purpose to restrict himself to that material in his construction in the description in the specification of the draw-. ings illustrative of his "improvements in window-screen frames." Notwithstanding the rule that a patent should be liberally construed in favor of the inventor, it is quite clear that in this case the inventor has so restricted himself as to prevent the application of that rule. It may be that a broader patent could not have been obtained, and this was the reason of the limitation. Having, however, thus narrowed his invention to the combination of metallic corner pieces with the frame sticks, he cannot complain of articles of manufacture which do not employ his combination, and omit that feature which he has

made so prominent. Harris v. Allen, 15 Fed. 106; Manufacturing Co. v. Rosenstock, 30 Fed. 67. If his patent does not give him all that he has invented and intended to secure, the law affords him a remedy, if he can bring himself within its conditions, by a surrender and reissue of his patent, and it would be his duty to take that proceeding in justice to the public, who, in the present condition of his patent, have no notice of the extent of his claim of invention as here asserted. Merrill v. Yeomans, 94 U. S. 568. It follows from this that the defendant is not guilty of infringement. The injunction must be denied, and the bill must be dismissed, with costs.